1                              **UNITED STATES DISTRICT COURT**
                             **SOUTHERN DISTRICT OF FLORIDA**

2                                 <u>**MIAMI DIVISION**</u>
                          CASE NUMBER 10-20089-CR-COOKE

3 **UNITED STATES OF AMERICA**

4          **vs.**

5 **FRED QUINTON COLLINS,**
                 Defendant

6                            - - -
                     SENTENCING HELD 11-22-10

7              BEFORE THE HONORABLE MARCIA G. COOKE
            UNITED STATES DISTRICT COURT JUDGE

8 <u>APPEARANCES</u>:
**FOR THE GOVERNMENT:**        **SEAN MCLAUGHLIN, AUSA**

9                              United States Attorney's Office
                             99 NE 4th Street

10                              Miami, FL 33132

11 **FOR THE DEFENDANT:**          **AYANA N. HARRIS, AFPD**
                             **SOWMYA BHARATHI, AFPD**

12                              **Federal Pubic Defender's Office**
                             **150 West Flagler Street**

13                              Miami, FL 33130

14 **REPORTED BY:**                **PATRICIA SANDERS, RPR**
                             *United States Court Reporter*

15                              400 North Miami Avenue, Suite 13-2
                             Miami, FL  33128

16                              T: 305.523.5528
                             patricia_sanders@flsd.uscourts.gov

17

18

19

20

21

22

23

24

25

1        COURTROOM DEPUTY:  We are here for sentencing on USA

00:00  2  versus Fred Quinton Collins, Case No. 10-20089-CR-Cooke

00:00  3        THE COURT:  Appearing on behalf of the United States.

00:00  4        MR. McLAUGHLIN:  Good afternoon.  Sean McLaughlin on

00:00  5  behalf of the United States.

00:00  6        THE COURT:  On behalf of defendant.

00:00  7        MS. HARRIS:  Good afternoon, Your Honor.  Ayana Harris

00:00  8  and Sowmya Bharathi, Assistant Federal Public Defenders on

00:00  9  behalf of Fred Collins who is present before the Court.

00:00 10        THE COURT:  Before we begin, can I ask defense counsel

00:00 11  and the Government to approach sidebar, please.  This doesn't

00:00 12  have to be on the record.

00:01 13        BRIEF DISCUSSION HELD OFF THE RECORD

00:01 14        THE COURT:  Counsel for Mr. Collins, have you had the

00:04 15  opportunity to read and review the presentence report?

00:04 16        MS. HARRIS: Yes.

00:04 17        THE COURT:  Are there any additions, deletions or

00:04 18  corrections we need to make to the report?

00:04 19        MS. HARRIS: No, Your Honor. I have reviewed the report

00:04 20  with him -- to the amended PSI.  There are no additions, Your

00:04 21  Honor.  Obviously we have the objection.

00:04 22        THE COURT:  And you have argument as well to 3553

00:04 23  factors in this sentence?

00:04 24        MS. HARRIS: Yes, Your Honor.

00:04 25        THE COURT:  I should say for the record that the

00:04  1    computed guideline range is 360 months to life.

00:04  2           MS. HARRIS: Yes, Your Honor.

00:04  3           THE COURT:  You may proceed, Miss Harris.

00:04  4           MS. HARRIS: Your Honor, starting with my first

00:05  5    objection to paragraph 35 of the PSI, which is the two level

00:05  6    enhancement for use of computer pursuant to guideline

00:05  7    2G1.3(b)(3).

00:05  8           Your Honor, I filed this objection because in talking

00:05  9    to one of my colleagues who had a factually similar case in

00:05  10   Fort Lauderdale, which I did cite in my pleadings, that is

00:05  11   United States versus Cox, 09-60243-CR-Cohn, in that particular

00:05  12   case the defendant used the Internet to advertise the sexual

00:05  13   services of two minors, and this objection was made and the

00:06  14   Court found it was not applicable because the computer was not

00:06  15   used to directly communicate with the minors or anyone that had

00:06  16   custody or control over the minors.

00:06  17          Your Honor, I just felt that because there was someone

00:06  18   who had, had a factually similar case that filed this

00:06  19   objection, I sort of felt a duty to Mr. Collins to bring that

00:06  20   to the Court's attention.

00:06  21          The only case I could find squarely on point was

00:06  22   United States versus Patterson.  Obviously that is a Seventh

00:06  23   Circuit Case and not binding on the Court, so I would rest on

00:06  24   my pleadings.  I will note, Your Honor, that in the probation

00:06  25   officer's addendum she did cite the case of United States

00:06  1    versus Sucre and Duverger.  What is interesting is I

00:06  2    represented Mr. Sucre up until the day of his plea where he

00:07  3    obtained private counsel.

00:07  4         In that case I believe it was Duverger who actually

00:07  5    met one of the minors on line on My Space. And I am not sure

00:07  6    what factual findings Judge Huck made in finding that that

00:07  7    enhancement was applicable.

00:07  8         I think it is certainly distinguishable in this case

00:07  9    because Mr. Collins did not meet the minor on line or meet or

00:07  10   communicate with anyone that she was --

00:07  11        THE COURT:  Does that make a difference since I

00:07  12   believe in this finding it would be that he used the back page

00:07  13   of Craig's List?  That is a computer function, correct?

00:07  14        MS. HARRIS:  Yes, Your Honor. But because another

00:07  15   Judge had granted it I thought I had a good faith basis to file

00:07  16   the objection. But I do understand that the computer was

00:07  17   utilized to advertise the services of the minor.

00:08  18        THE COURT:  All right.

00:08  19        MS. HARRIS: My second objection was to paragraph 39,

00:08  20   obstruction of justice.

00:08  21        THE COURT:  I just want to make sure, the first

00:08  22   objection goes to paragraph number --

00:08  23        MS. HARRIS: 35, Your Honor.  The second objection is

00:08  24   to paragraph 39 for obstruction of justice. Your Honor, that

00:08  25   objection was just based on the fact that Mr. Collins was

00:08  1    acquitted at trial of witness tampering and conspiracy to

00:08  2    engage in witness tampering.

00:08  3            I understand that what constitutes relevant conduct is

00:08  4    squarely in the Court's discretion. But I was asking the Court

00:08  5    to give the jury's decision to acquit Mr. Collins some weight.

00:08  6    I understand the standard here is preponderance of the

00:08  7    evidence, and that is squarely in the Court's discretion.

00:08  8            THE COURT:  So, if I were to grant your objection to

00:09  9    paragraph 39 would that make the adjusted offense level 40

00:09  10   instead of 42?

00:09  11           MS. HARRIS: Yes, Your Honor.

00:09  12           THE COURT:  That does not seem to change the

00:09  13   calculation for your client.

00:09  14           MS. HARRIS: It does not.

00:09  15           THE COURT:  It's still 360 to life.

00:09  16           MS. HARRIS: It only changes the calculation if the

00:09  17   first objection to paragraph 35 were granted. Otherwise it does

00:09  18   not change his calculation.

00:09  19           THE COURT:  It says to entice, encourage, offer or

00:09  20   solicit a person to engage.  In this case the facts as they

00:09  21   were presented would be that the backpage ad or the Craig's

00:10  22   List ad were used to encourage people to call these phone

00:10  23   numbers.

00:10  24           MS. HARRIS: Yes, Your Honor.  It was really -- the

00:10  25   objection is based on the plain reading of application note

00:10  1   four, which relates to subsection B(3), which is intended to

00:10  2   apply only to the use of a computer service to communicate

00:10  3   directly with the minor or with the person that exercises

00:10  4   custody, care or supervisory control over the minor.

00:10  5        I have read the Government's position that that goes

00:10  6   to subsection A of the guideline and not subsection B. But that

00:10  7   was the basis by which I filed the objection.

00:10  8        THE COURT:  Thank you. Any other objections to the

00:10  9   computations?

00:10  10       MS. HARRIS: No, Your Honor.

00:10  11       THE COURT:  I would like to hear the Government's

00:10  12  position before we go to the 3553 factors. Counsel for the

00:10  13  United States, do you have an argument on any of these issues?

00:10  14       MR. McLAUGHLIN:  Your Honor, in terms of the computer

00:10  15  use application, I think we filed in my objections my response

00:11  16  to counsel's objections -- our position on that.

00:11  17       Essentially our position is that the commentary to

00:11  18  that section is plainly at odds with subsection B.  And I think

00:11  19  it's a plain reading of subsection B, as the Court noted.

00:11  20       In terms of the defendant placing ads on Craig's List

00:11  21  and backpage.com with the number of the minor, it was clearly

00:11  22  intended for people to call the minor and engage in sexual

00:11  23  activity with the minor.

00:11  24       So a plain reading of 2G1.3(b)(3) in our mind would

00:11  25  lead -- that the Court should apply the two level enhancement.

00:11  1    With regard to the obstruction enhancement, I think it's plain

00:11  2    as day that is what Mr. Collins was doing in this case. I don't

00:11  3    know why --

00:11  4         THE COURT:  But we do have a finding of not guilty by

00:11  5    a jury.

00:11  6         MR. McLAUGHLIN:  That's correct, Your Honor.

00:11  7    Sometimes inconsistent verdicts are hard to decipher and

00:11  8    understand.

00:11  9         THE COURT:  Or the jury could have in listening to the

00:11  10   evidence found that he engaged in all of the behavior that was

00:12  11   the substantive offense in this case but did not engage in the

00:12  12   obstruction. I understand the Government disagrees with that,

00:12  13   but that could be what the jury found.

00:12  14        MR. McLAUGHLIN:  True.  But I would also note that

00:12  15   witness tampering alone is not a basis for obstruction.

00:12  16   Certainly the destruction of evidence, as pointed out in our

00:12  17   filing, with regard to Mr. Collins calling back to Miss Camacho

00:12  18   and telling her to get rid of everything and destroy the

00:12  19   laptops is clearly obstructive behavior. Looking at the wealth

00:12  20   of --

00:12  21        THE COURT:  But the jury disagreed.

00:12  22        MR. McLAUGHLIN:  Your Honor, he was not charged with

00:12  23   that. He was merely charged with obstruction.  Especially as to

00:12  24   the minor's mother.  I think the Court could look at the tenor

00:12  25   of all those calls in regard to his obstruction --

00:12   1          THE COURT:  So look at the uncharged conduct?

00:12   2          MR. McLAUGHLIN: Certainly.

00:12   3          THE COURT:  That would be very un-Scalia like,

00:12   4    wouldn't it?

00:12   5          MR. McLAUGHLIN:  It would be, Your Honor, but at the

00:13   6    end of the day I don't hold Mr. Scalia as the model for which

00:13   7    all Judges should be applying the law. That's just my position.

00:13   8          I think if the Court looks at his behavior in this

00:13   9    case in regard to the FDC calls and does not find an

00:13   10   obstruction enhancement the Court would really be turning a

00:13   11   blind eye as to what he did.

00:13   12         I think this case is an example where it's crystal

00:13   13   clear that he obstructed justice in this case.  If the Court

00:13   14   does not want to apply it I understand. It would still be

00:13   15   something I would be arguing for.

00:13   16         THE COURT:  So, your argument would be that outside of

00:13   17   the charged conduct there are all these other indicia that the

00:13   18   Government has proved by a preponderance of the evidence?

00:13   19         MR. McLAUGHLIN: Correct.

00:13   20         THE COURT:  That would indicate to the Court that this

00:13   21   is an appropriate enhancement in this guideline calculation.

00:13   22         MR. McLAUGHLIN: Correct.  I would note the charged

00:13   23   conduct in the case was solely related as to the minor's

00:13   24   mother, that alone. What I argued in our filing is there is

00:14   25   conduct regarding Mr. Collins making sure Miss Camacho does not

00:14   1   testify against him, making sure Miss Grant does not testify

00:14   2   against him. Any other female prostitute out in Hawaii does not

00:14   3   testify against him.

00:14   4           In addition to instructing Miss Camacho to throw away

00:14   5   any possible evidence in their apartments, specifically the

00:14   6   laptop computers, which in our position would have had evidence

00:14   7   regarding the old Craig's List ads and the old backpage ads.

00:14   8           THE COURT:  Thank you. Anything else, Miss Harris?

00:14   9           MS. HARRIS: Not with regard to the objections, Your

00:14   10  Honor.

00:14   11          THE COURT:  Why don't I rule on the objections first,

00:14   12  and then we can discuss the 3553 factors.

00:14   13          MS. HARRIS: Yes, Your Honor.

00:14   14          THE COURT:  I recognize the calculations in this case

00:14   15  are harsh. But I think one of the reasons why they are harsh is

00:14   16  this is really a statute where the Sentencing Commission and

00:14   17  Congress have made some specific judgment calls as to the

00:14   18  societal effects of this kind of behavior and have chosen to

00:15   19  deal with it harshly.

00:15   20          I do not believe that Probation has miscalculated the

00:15   21  guidelines in reviewing the sentencing guidelines. First of

00:15   22  all, as to the computer.  I do not think, based upon my review

00:15   23  of the guideline, it would be limited to the computer

00:15   24  soliciting a minor. I think that part and parcel of the

00:15   25  guideline is the computer used to traffic, entice. It's very

broad.   To entice, encourage, offer or solicit a person to engage in prohibited sexual conduct with a minor. So, I believe it's a correct computation at paragraph 35.

As to paragraph 39, I was initially intrigued by the the argument because we do have a case where the jury found your client not guilty of certain obstructionist conduct.  But as the Government so rightly points out, one, there was other obstructionist uncharged behavior.

And, two, all that has to be proved is by a preponderance of the evidence for guideline purposes. So, I think the enhancement at paragraph 39 is correctly computed.

You may now proceed knowing I believe the guideline range as it stands at this time is correctly computed.

MS. HARRIS: Your Honor, next I want to address the factors that were laid out in my sentencing memorandum. Specifically I am making a 3553(a) request for a variance from the guidelines pursuant to Booker, and also pursuant to Section 3553(a)(6).

Your Honor, specifically that section requires a sentencing Court to avoid the need for -- avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

In my pleading I laid forth five different cases that I found that had factual similarities to Mr. Collins' case. Your Honor, the only case of those five that actually went to

00:17  1   trial and involves a defendant that was convicted at trial of

00:17  2   similar conduct to Mr. Collins is United States versus Cox,

00:17  3   which I previously cited in my objections.

00:17  4        That case involved two minors working for defendant

00:17  5   Cox where he listed them on Craig's List and backpage.com, as

00:17  6   was done in this case.  And also provided a cellular phone and

00:17  7   basically instructed them on how to answer the phone and how

00:17  8   much to charge for the dates.

00:17  9        Those two minors engaged in commercial sex acts for

00:17  10  money and gave all the proceeds to Mr. Cox. Following the jury

00:17  11  trial --

00:17  12       THE COURT:  Do you know what the guideline computation

00:18  13  was in those cases, at least as to Cox?  Because that's the one

00:18  14  individual who is similarly situated to your client.

00:18  15       Everyone else pled guilty, got their acceptance of

00:18  16  responsibility, had a plea agreement with the Government, a

00:18  17  negotiated sentence. The only person that is at all similar to

00:18  18  your client is the one that you compare in United States versus

00:18  19  Cox.

00:18  20       MS. HARRIS: Your Honor, I do not have Mr. Cox's PSI,

00:18  21  which I was attempting to get.  I remember talking to Timothy

00:18  22  Day from our office, and I believe his guidelines were

00:18  23  somewhere in the area of 280. I think it was just under the

00:18  24  360 -- let me see.  It was somewhere in the, I believe, 292

00:18  25  262 range.  It was somewhere in that range. I apologize. I am

trying to look to see if I jotted that down. But I do remember

that his guidelines were just under -- give me just one moment.

I apologize, I don't have that right now. I believe it was in

the 260, 280, somewhere around that, range.

In all candor to the Court, speaking to Mr. Day, there

were other factors that Judge Cohn considered in granting a

variance. Specifically, these minors admitted that they engaged

in prostitution before, which I think weighed into Judge Cohn's

decision to grant such a large variance in that case.

In Mr. Collins' case obviously the conduct is pretty

egregious.  But in my research in the past ten years of cases

in this district there's only been three defendants that went

to trial.

One defendant went to trial prior to the 2006

amendment that changed the minimum to the ten years.  That

would not be a case we could consider -- that would be similar.

The other two cases are Mr. Cox, and then also United

States versus Daniels, which Mr. McLaughlin actually prosecuted

a few weeks before we went to trial in Mr. Collins' case.

That also involved an attorney from my office, Jan

Smith.  Mr. Daniels was not convicted of the 1591 conduct which

carries the min-man.

So, there was not a lot of guidance in a sentence that

would be appropriate in this case. I have not seen anyone

sentenced to 360 months or life in this type of case in the

00:20  1    Southern District of Florida. Your Honor, I just think that

00:20  2    while the conduct is egregious and while there certainly is a

00:21  3    need under 3553(a) to provide just punishment, if he had taken

00:21  4    a plea Mr. Collins would have probably been in the area of 12

00:21  5    to 15 years.

00:21  6         And while Mr. Collins obviously exercised his

00:21  7    Constitutional right to go to trial and held the Government to

00:21  8    its burden, for it to jump from 12 to 15 all the way up to

00:21  9    360 --

00:21  10        THE COURT:  Even with his background the 12 to 15

00:21  11   would have been a negotiated sentence?  He has a criminal

00:21  12   history category of three.

00:21  13        MS. HARRIS: Actually, Your Honor, yes. Mr. McLaughlin

00:21  14   and I even at the Eleventh hour when witnesses were about to

00:21  15   get on planes were negotiating a plea in this case.  It would

00:21  16   have involved Mr. McLaughlin making some concessions with

00:21  17   regard to some of the enhancements that might be applicable.

00:21  18        Obviously acceptance of responsibility would have been

00:21  19   a key factor because that would have provided two levels off.

00:21  20   There would not have been obstruction of justice.

00:22  21        I think he would have ended up, and Mr. McLaughlin

00:22  22   can correct me if I am wrong, but I think he would have ended

00:22  23   up somewhere around a 36 or 38 but not over 40.

00:22  24        THE COURT:  A 36 with no criminal history is 188 to

00:22  25   235 months. That's no criminal history. Your client has a level

00:22  1    three, which is 235 to 293. I have a question counsel. Is it

00:22  2    appropriate for me to consider, and I should probably ask the

00:22  3    prosecutor, but is it appropriate for me to consider in terms

00:22  4    of 3553 factors that your client specifically held the

00:22  5    Government to its proof, and in this case at some expense?

00:22  6    There were two witnesses that came from Hawaii.

00:22  7            MR. McLAUGHLIN:  That's correct, Your Honor.

00:22  8            THE COURT:  Who had to be put up three or four nights

00:22  9    at the Government's expense. Let's just say, being fiscally

00:23  10   conservative, that each of those tickets cost a grand, and

00:23  11   putting those people up three or four nights was another grand.

00:23  12   So in essence, just on those witnesses alone, not talking about

00:23  13   anyone else, that cost the Government $5000.

00:23  14           Is that a factor I can take into consideration?  Where

00:23  15   the Government was open to a negotiated settlement of this

00:23  16   case, up to and including the day of trial.

00:23  17           MS. HARRIS: Is the question posed to me or Mr.

00:23  18   McLaughlin?

00:23  19           THE COURT:  You.

00:23  20           MS. HARRIS: I certainly think that the Court can take

00:23  21   that into consideration.  There is always the notion that after

00:23  22   trial the sentence will be higher, which is the reason we try

00:23  23   to resolve these types of cases.

00:24  24           Mr. Collins exercised his Constitutional right to go

00:24  25   to trial, and the jury has spoken. I think the range that is

1  produced by the guidelines is one of those -- to me it is one

2  of those cases where the guideline range is still pretty high.

3  I understand the offense conduct needs to be punished, but I

4  think that the guidelines are producing in this case a sentence

5  that is greater than necessary to achieve the 3553(a) factors.

6        Even in imposing a sentence of 20 years, Mr. Collins

7  is 34 years old, so we are talking about his being released

8  from custody in his early fifties.

9        In terms of the risk of recidivism at that age, as

10  well as incapacitation and general deterrence, that is a

11  lengthy period of time.  We're not talking five or ten or even

12  fifteen years. We're talking about a 20-year sentence where

13  this individual would be -- well past living half of his life.

14  So, I think that it would be an appropriate sentence in this

15  case.

16        THE COURT:  Would this sentence be markedly different

17  had this been a more, this might not be the correct word for

18  it, but if this had been a more sophisticated scheme?

19        I mean, does the statute recognize where it is a more

20  sophisticated scheme, a larger operation?  And I realize one of

21  the things that sends this off the charts is because one is

22  minor.  But are three women treated differently than six women

23  women or ten women?  Does the statute see that as a potential

24  difference?  And that's for defense counsel.

25        MS. HARRIS: Not the statute, Your Honor, but I think

1    the guidelines take that into account. I believe if it's five

2    or more, if I am not mistaken, there is an enhancement for

3    that.   The statute itself does not take into consideration

4    singular or multiple victims.

5         I think in looking at the nature and circumstances of

6    this defendant, we have an individual whose involvement and

7    specific criminal conduct was not that extensive with regard to

8    the pimp and prostitution allegations.

9         I think at best this goes from somewhere in 2008 that

10   Mr. Collins began engaging in this conduct. And even the

11   testimony adduced at trial from one of the Government's own

12   witnesses seemed to suggest Mr. Collins was employed, that he

13   was gainfully employed.

14        That he was sort of church going and living a normal

15   life. For whatever reason he took a turn into this lifestyle

16   and here we are.

17        I understand that looking at Mr. Collins' priors that

18   there are certainly issues. It certainly demonstrates some

19   anger issues, anger towards women and violence towards women

20   that is undeniable when you look at the PSI.

21        But this is not an individual who engaged in this

22   conduct over a prolonged period over the course of his life.

23   You have someone who was, maybe a year and a half at best, was

24   involved in this conduct.   That is going back through the text

25   messages and the history of the prostitutes that we know of,

00:28  1    and even the ones that are not charged regarding this criminal

00:28  2    conduct. We're not talking about an individual that was doing

00:28  3    this for a lengthy period of his life.

00:28  4         I think the Court should take into consideration he

00:28  5    did maintain legitimate employment and that he does have a

00:28  6    situation, although it's certainly not an excuse, Your Honor,

00:28  7    where there was significant abuse, childhood abuse from a young

00:28  8    age, which is corroborated by his family members, and I think

00:28  9    has probably led Mr. Collins to certainly not make the best

00:28  10   decisions when it comes to dealing with his anger.

00:29  11        And specifically it seems to be anger directed towards

00:29  12   women.  Which when you read the criminal history and other

00:29  13   criminal conduct it sort of jumps out.  There's no question

00:29  14   about that.

00:29  15        I have had numerous discussions with Mr. Collins about

00:29  16   the genesis of the conduct. The things he was subjected to at a

00:29  17   young age that probably caused him not to make the best

00:29  18   decisions and certainly probably contributed greatly to the

00:29  19   case at bar.  I think that those things can be considered.

00:29  20        Also with regard to the guidelines, there are a number

00:29  21   of enhancements while I think correctly calculated, I think

00:29  22   Probation correctly calculated them, he gets an increase for

00:29  23   the use of the computer when most of these cases nowadays deal

00:29  24   with people being advertised over a computer because this is

00:29  25   sort of this information age where that is the way people

```
00:30  1    communicate. So, you don't have a lot of people walking the
00:30  2    strip anymore. It's sex trafficking by force, fraud or coercion
00:30  3    so of course it involves a sex act.
00:30  4         He gets another increase for that. He gets a bump for
00:30  5    being the leader organizer. Well, he is obviously charged as
00:30  6    being the pimp in this case.  And again it's sort of something
00:30  7    that --
00:30  8         THE COURT:  Almost double dipping.  If you are the
00:30  9    pimp you are the leader, organizer?
00:30  10        MS. HARRIS: Yes, Your Honor. I realize the guidelines
00:30  11   are kind of high, but he received several increases that I
00:30  12   think would be considered double counting.  So, I think the
00:30  13   guidelines in this case are producing a recommended sentencing
00:30  14   range that is greater than necessary to achieve the 3553(a)
00:30  15   factors.
00:30  16        A sentence of 240 months is lengthy.  It is certainly
00:30  17   enough to provide an adequate deterrence to this criminal
00:30  18   conduct. It is certainly enough to protect society from further
00:31  19   crimes of Mr. Collins.
00:31  20        It is certainly enough to protect these victims from
00:31  21   further crimes of Mr. Collins. I think that it would be
00:31  22   appropriate in light of all of the 3553(a) factors with regard
00:31  23   to this defendant.
00:31  24        THE COURT:  Thank you.  Counsel for the United States.
00:31  25        MR. McLAUGHLIN: I would begin with noting counsel made
```

00:31  1  reference to United States versus Daniels, which was a case I

00:31  2  prosecuted with Jan Smith from the Public Defender's Office. In

00:31  3  that case Mr. Daniels was prosecuted up in the Eastern District

00:31  4  of Michigan for a variety of sex trafficking and child

00:31  5  pornography crimes.

00:31  6       The Court up there gave him 420 months. He came down

00:31  7  here to face charges for conduct that occurred down here. He

00:31  8  was found guilty and Judge Moore gave him 78 months and ran it

00:32  9  consecutively to the 420 months.

00:32  10      THE COURT:  So in essence he is facing a total of --

00:32  11      MR. McLAUGHLIN: 498 months. And while that might sound

00:32  12  draconian, I think it is important to look at the statutory

00:32  13  maximum in this case.  What is the statutory maximum?  It's

00:32  14  life.  What are the guidelines?  They're they're 360 to life.

00:32  15      I think the Court articulated earlier that, in fact,

00:32  16  Congress and the Sentencing Commission did that for a specific

00:32  17  reason.  This pimp and prostitution conduct had gone largely

00:32  18  unpunished and I think culturally was viewed as not a big deal.

00:32  19      So Congress and the Sentencing Commission said, that's

00:32  20  enough, this is a big deal, and those who engage in it are

00:32  21  going to suffer punishment that is severe.

00:32  22      That's the only way in terms of deterrence under the

00:32  23  3553(a) factors we can put a stop to this.

00:33  24      That being said, I think what separates this case from

00:33  25  the others that I have seen come across my desk is the

00:33  1    violence. If you look at Mr. Collins' criminal history it's

00:33  2    littered with violence against women. If you look at his text

00:33  3    messages with Miss Grant, they reveal physical violence to

00:33  4    maintain control.

00:33  5           And as you heard the testimony at trial, that is how

00:33  6    the pimp prostitution relationship is -- the pimp has to

00:33  7    maintain dominance and control at all times.  Whether that be

00:33  8    through physical or psychological violence, it's always there.

00:33  9    I think to me that is what separates this case.

00:33  10          We have Mr. Collins, who is clearly a pimp, not just

00:33  11   pimping out girls who are having a good time and enjoying it

00:33  12   and thinking this is the best thing ever, no, they're living in

00:33  13   fear of psychological and physical violence.

00:33  14          I think at the end of the day there is no

00:34  15   justification for a variance in this case.  I know the Court

00:34  16   was not too excited about the Government's 420 month

00:34  17   recommendation, but at a minimum I think the guidelines should

00:34  18   be honored.  And I believe a sentence of 360 months is

00:34  19   appropriate in this case.

00:34  20          THE COURT:  Any response before I hear from your

00:34  21   client, Miss Harris?

00:34  22          MS. HARRIS: Just briefly. Mr. McLaughlin is correct

00:34  23   that --

00:34  24          THE COURT:  I apologize, Miss Harris. I want to go

00:34  25   back to Mr. McLaughlin for just a moment.  This sentence as

00:34  1    calculated would be what we would give to a major kingpin drug

00:34  2    dealer involved in a crime of violence, someone involved in so

00:34  3    called RICO activity.  This guideline is meant for the most

00:34  4    serious offenses in the Federal system.

00:34  5            Would you agree, Mr. McLaughlin?

00:34  6            MR. McLAUGHLIN: Correct.  I think because it involves

00:34  7    minors it changes the dynamic.  There are not minors involved

00:35  8    for the most part in drug trafficking and bank robberies and

00:35  9    things of that nature.

00:35  10           THE COURT:  All right.  Miss Harris.

00:35  11           MS. HARRIS: Your Honor, with regard to the Daniels

00:35  12   case, Mr. Daniels was sentenced to 420 months in the Eastern

00:35  13   District of Michigan.

00:35  14           I think the thing that is distinguishable is Mr.

00:35  15   Daniels is what would be called a Gorilla pimp.  As the agent

00:35  16   pointed out at trial, these are pimps that use violence to sort

00:35  17   of keep their prostitutes in order.

00:35  18           Specifically, Mr. Daniels had been involved in a

00:35  19   criminal enterprise that involved extensive adult and juvenile

00:35  20   prostitution. And that investigation revealed nine minors and

00:35  21   over eighty adults that were advertised as prostitutes over the

00:35  22   Internet for the purpose of providing sexual services.

00:35  23           So, I think it's distinguishable in that Mr. Daniels

00:36  24   received 420 months -- and we're talking about one of the worst

00:36  25   of the worst.

00:36   1          And I am not here to quantify what is acceptable

00:36   2   pimping, if you will, but certainly Mr. Collins' conduct in

00:36   3   this case and the limited time he was engaged in this criminal

00:36   4   conduct compared to someone at the other end of the spectrum

00:36   5   who had a criminal enterprise that involved multiple adult and

00:36   6   juvenile prostitutes, I think it's distinguishable conduct

00:36   7   here.

00:36   8          This is a guideline that is reserved for the worst of

00:36   9   the worst, and I think because the Court has discretion to

00:36   10  tailor a sentence that takes these things into consideration.

00:36   11  I would ask that Your Honor do so in this case.

00:36   12          Mr. Collins is still looking at a substantial amount

00:36   13  of time.  And he recognizes that, and I recognize that as well.

00:36   14  Thank you, Your Honor.

00:36   15          THE COURT:  Does your client have anything to say to

00:36   16  the Court before I rule?

00:36   17          MS. HARRIS: Yes, Your Honor.

00:37   18          THE DEFENDANT:  First, I would like to apologize to

00:37   19  the Court, to my family, to everyone that was involved in this

00:37   20  case.  This is a very hard thing for me. I have never in my

00:37   21  life been through anything like this.

00:37   22          I would like to apologize to my family and to my

00:37   23  children who I can't be there for because of a decision I have

00:37   24  made, because of the things I am here for. I would like to ask

00:38   25  the Court to have mercy on me. I throw myself at the mercy of

1  the Court.  I realize the conduct that I was engaged in was --

2  should not be done.  I understand the law is there to protect

3  people from crimes being committed from things being done such

4  as I did. I am an intelligent person, and I understand that.

5        I respect the Court.  I respect the Court's decision.

6  I would like to ask God to bless me and have mercy on me and to

7  touch your heart and have leniency on me.

8        I do understand that this conduct is far from

9  acceptable. Especially with myself having children. I can't

10  start to describe how I feel towards everyone who was involved

11  in this situation.

12        This is not who I am. This is probably the worst --

13  this is the worst thing I have ever been through in my life. I

14  have never in my life even thought I would be in this kind of

15  situation.  From going to college, to pursuing my dreams in

16  Hawaii.

17        The reason I was in Hawaii in the first place was

18  trying to achieve a goal to be someone in life. This is not

19  something where I woke up one day and said, yeah, I want to be

20  a pimp.

21        I am a child of God. I believe God will bring me

22  through this. I can go back into the world and be a citizen,

23  and upright citizen living a proper life, being a tax paying

24  citizen. Raising my children, living a normal life.  I

25  apologize to the Court.  I apologize to my mother. This is not

00:40  1  who Fred Collins is.  This is one mistake I have made.  This is

00:40  2  not me -- the text messages, everything you heard, that's not

00:40  3  me.  I recognize that I made a harsh mistake, but this is not

00:40  4  who I am.  Thank you.

00:40  5       THE COURT:  I am going to ask the defendant to remain

00:40  6  standing.  I hear this defendant saying this behavior is not

00:41  7  who he is.  But based upon the evidence that came out at trial,

00:41  8  at least, for whatever the period of time of this criminal

00:41  9  conduct that is who exactly who he was.

00:41  10       This was the lifestyle he chose to live. And given

00:41  11  several opportunities not to do this he continued to do it.  I

00:41  12  think he said it best himself, he is not a person without

00:41  13  intelligence or without the means to have engaged in another

00:41  14  lifestyle.

00:41  15       He had gone to school. He knew what it was like to

00:41  16  have a life outside of this one. He consistently chose to lead

00:42  17  it.  But the most reprehensible part of it is not the

00:42  18  trafficking, it is using a person who was not only a child by

00:42  19  definition of the law but a child in this circumstance who by

00:42  20  all the descriptions of the testimony in this case was lost.

00:42  21       Someone who was estranged from her family, who had

00:42  22  escaped from a drug rehab. He could not have picked a more

00:42  23  vulnerable person at the time.  This is someone who was looking

00:42  24  for a place to stay and be accepted, and he knew that and he

00:42  25  took advantage of that to turn her into the kind of individual

| | |
|---|---|
| 00:42 | 1 |

he wanted her to be.  That said, I do not find that the

360 months to life sentence adequately comports with the

factors in 3553. That is essentially a life sentence.

Although this is harsh conduct and this will be a

harsh sentence, I do not think that is one which comports with

3553.  However, we do need to send a strong message to society

that this type of behavior will not be tolerated, and it's not

acceptable.

I find that this defendant is unable to pay a fine

therefore no fine will be imposed.

It is the judgment of the Court the defendant is

hereby committed to the Bureau of Prisons for a term of 260

months. This term consists of 260 months each as to Counts 1,

2, 5 and 6 and a term of 120 months as to Count 3 and

260 months as to Count 4, to be served concurrently.

Upon release from imprisonment the defendant shall be

placed on supervised release for a term of five years as to

each of Counts 1, 2, 3, 4, 5 and 6, all such terms to run

concurrently.

Within 72 hours of release from the Bureau of Prisons

defendant shall report to the Probation Office in the District

in which he is released.  While on supervised release the

defendant shall not commit any crimes, is prohibited from

possessing a firearm or other dangerous device or weapon and

shall comply with the standard conditions including the

00:44   1    following special conditions:  If I did not include it the DNA

00:44   2    collection is included.  The financial disclosure requirement,

00:44   3    the self employment restriction, the no unsupervised conduct

00:45   4    with minors, no contact with minors, no involvement with youth

00:45   5    organizations, as well as sex offender treatment, the Adam

00:45   6    Walsh Act search conditions and sex offender registration.

00:45   7            All of those conditions which are more fully outlined

00:45   8    in part G of the presentence report.

00:45   9            Now that sentence has been imposed does the defendant

00:45  10    or counsel object to the Court's findings of fact or the manner

00:45  11    in which sentence was pronounced?

00:45  12            MS. HARRIS: No, Your Honor.

00:45  13            THE COURT: Sir, you have the right to appeal the

00:45  14    sentence just imposed.  The notice of appeal must be filed

00:45  15    within 14 days.  If you are unable to pay the cost of the

00:45  16    appeal you may apply for leave to appeal in forma pauperis.

00:45  17            Is there any request for a facility, Miss Harris?

00:45  18            MS. HARRIS: We would request a designation in Ohio so

00:46  19    he can be closer to his family.

00:46  20            THE COURT:  I will make that designation. I am certain

00:46  21    your attorney has explained to you this is not a guarantee,

00:46  22    this is only a request. The Bureau of Prisons will ultimately

00:46  23    determine where you will be housed.

00:46  24            Do you understand that?

00:46  25            THE DEFENDANT:  Yes, Your Honor.

00:46 1      MS. HARRIS: I would request the Court recommend a drug

00:46 2  treatment program while in custody.

00:46 3      THE COURT:  I will do that as well.  Anything else?

00:46 4      MR. McLAUGHLIN:  If I might, I did not hear Your Honor

00:46 5  mention the $600 special assessment --

00:46 6      THE COURT:  You are correct. There is a mandatory

00:46 7  special assessment of $600 which will be imposed.

00:46 8      MR. McLAUGHLIN: I would note, just so the Court is

00:46 9  aware, there is going to be no restitution in this case.

00:46 10 Attempts have been made to reach out to the victim and the

00:46 11 victim's mother, which have been unsuccessful. The Government

00:46 12 does not anticipate a future restitution hearing.

00:47 13     I would just ask in terms of the obstruction finding

00:47 14 that the Court adopt the Government's points it made in its

00:47 15 filings so the record is clear.

00:47 16     THE COURT:  I thought I did.  I will note for the

00:47 17 record I find those obstruction issues have been proved by a

00:47 18 preponderance of the evidence and that they were separate and

00:47 19 apart from the crime that the jury found the defendant not

00:47 20 guilty of in the trial.

00:47 21     MR. McLAUGHLIN: Thank you, Your Honor.

22     THE COURT:  Thank you.

23                  SENTENCING CONCLUDED

24

25

1              -   -   -

2                **C E R T I F I C A T E**

3          I hereby certify that the foregoing is an accurate

4    transcription of proceedings in the above-entitled matter.

5

6                                    /S/PATRICIA SANDERS

7    _____              _____

8    DATE FILED                PATRICIA SANDERS, RPR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25